ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| **NICOLE REYES PERMUY Y OTROS**<br>DEMANDANTE(S)-RECURRIDA(S)<br><br><br>V.<br><br><br>**ALTITUDE WEST, LLC H/N/C ALTITUDE TRAMPOLINE PARK BAYAMÓN Y OTROS**<br>DEMANDADA(S)-PETICIONARIA(S) | **KLCE202400485** | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de **BAYAMÓN**<br><br>Caso Núm.<br>**BY2022CV03552** (402)<br><br>Sobre:<br>Daños y Perjuicios |

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón.

*Barresi Ramos*, juez ponente

# S E N T E N C I A

En San Juan, Puerto Rico, hoy día 20 de marzo de 2026.

Comparece ante este Tribunal de Apelaciones, **ALTITUDE WEST, LLC H/N/C ALTITUDE TRAMPOLINE PARK BAYAMÓN (ALTITUDE PARK)** mediante una *Petición de Certiorari* entablada el 2 de mayo de 2024. En su recurso, nos solicita que revisemos la *Resolución* promulgada el 14 de marzo de 2024 por el Tribunal de Primera Instancia (TPI), Sala Superior de Bayamón.[1] Mediante la antedicha determinación, el foro de instancia declaró *no ha lugar* la *Moción de Sentencia Sumaria* presentada el 16 de octubre de 2023 por **ALTITUDE PARK**.

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

## - I -

El 12 de julio de 2022, la señora **NICOLE REYES PERMUY** (señora **REYES PERMUY**), por sí y en representación del menor **D.R.R.,** incoó una *Demanda*

---

[1] Dicho dictamen judicial fue notificado y archivado en autos el 14 de marzo de 2024. Apéndice de la *Petición de Certiorari*, págs. 203-217.

sobre daños y perjuicio.[2] Alegó que el 8 de enero de 2022, el menor **D.R.R.** sufrió un accidente en el parque de trampolines de **ALTITUDE PARK**. Expuso que ese día, el menor **D.R.R.** se encontraba saltando en una atracción conocida como *WipeOut* y después de varios brincos, el menor **D.R.R.** fue golpeado por el aparato y fue arrojado a la lona. En consecuencia, sufrió una fractura en el fémur de su pierna derecha.

Más tarde, el 15 de agosto de 2022, **ALTITUDE PARK** presentó su *Contestación a la Demanda* en la cual levantó sus defensas afirmativas y negó responsabilidad sobre dicho incidente.[3]

Luego de varios incidentes procesales, el 16 de febrero de 2023, las partes presentaron su *Informe para el Manejo del Caso*, entre otras cosas, estipularon la grabación del accidente.[4]

Subsiguientemente, el 16 de octubre de 2023, **ALTITUDE PARK** presentó una *Moción de Sentencia Sumaria.*[5] El 22 de noviembre de 2023, la señora **REYES PERMUY** presentó su *Oposición a "Moción Solicitando Sentencia Sumaria".*[6] A los pocos días, el 27 de noviembre de 2023, se emitió *Orden* dando por sometida las mociones dispositivas y apercibiendo que no se aceptarían réplicas ni dúplicas.[7]

Tiempo después, el 14 de marzo de 2024, el tribunal de instancia dictó la *Resolución* impugnada. En esta, formuló veinte (20) hechos incontrovertidos y diecinueve (19) hechos controvertidos, a saber:

---

[2] Apéndice de la *Petición de Certiorari*, págs. 1-4.
[3] *Íd.*, págs. 5-8.
[4] *Íd.*, págs. 9-13.
[5] *Íd.*, págs. 14-110. La *Moción de Sentencia Sumaria* incluyó los siguientes documentos: (1) porción de la toma de deposición del menor D.R.R.; (2) porción de la toma de deposición de la señora **REYES PERMUY**; (3) Acuerdo del Participante; (4) Certificado de firma; (5) porción de la toma de deposición de señora Gladisha Molina; (6) hoja del Departamento de Radiología de San Jorge Children's & Women's Hospital; (7) hoja de Fajardo Group Practice; (8) Declaración de Conformidad AKROBAT; (9) Reglas *WipeOut*; (10) Manual de Instrucciones de Rotating Beam; (11) hoja HIMA San Pablo Bayamón; y (12) Contestaciones a Segundo Pliego de Interrogatorios y Requerimiento de Producción de Documentos.
[6] Apéndice de la *Petición de Certiorari*, págs. 111-202. La *Oposición a "Moción Solicitando Sentencia Sumaria"* está acompañada de los siguientes anejos: (1) Foto; y (2) deposición de la señora Gladisha Molina.
[7] Apéndice de la *Petición de Certiorari*, págs. 203-204.

Hechos Incontrovertidos:

1) El menor D.R.R. es menor de edad. Nació el 28 de junio de 2011.

2) Los padres del menor D.R.R. son los demandantes, la señora Reyes y el señor Rodríguez.

3) Previo al 8 de enero de 2022, D.R.R. había visitado parques de trampolines Altitude en 2 ocasiones: el 27 de agosto de 2021 y el 6 o 7 de septiembre de 2021. Además, había ido en dos (2) ocasiones previas al parque de trampolines Bounce.

4) En todas esas visitas previas a parques de trampolines, la señora Reyes, madre de D.R.R., estuvo presente.

5) En su visita al parque el 27 de agosto de 2021, la señora Reyes completó un relevo de responsabilidad a favor del parque, en representación de su hijo D.R.R.

6) Dicho relevo tiene una vigencia de un año; es decir, hasta el 26 de agosto de 2022.

7) La señora Reyes completó dicho documento, libre y voluntariamente, pero no lo leyó.

8) Dicho relevo dispone en su primer párrafo: "La participación en las actividades de un parque de trampolines conlleva riesgos conocidos e imprevistos que pueden resultar en el daño físico y/o emocional, parálisis, muerte o daño a sí mismo y/o a otros. Los riesgos pueden incluir, pero no son limitados a, resbalarse y caer, choque con algún objeto y/u otras personas las cuales puede resultar en torcedura, fractura, ruptura, raspasos, moretones, dislocaciones y lesiones a la cabeza, espalda o cuello".

9) Además, el documento dispone: "Yo, en mi nombre, mi cónyuge, mi hijo(s), menor del cual yo soy encargado, mi padre(s), mis heredero(s), cesionarios, representantes personales…. Acepto, completamente y para siempre, acceder, liberar y descargar a Altitude West de cualquier y toda reclamación, acción, demandas, juicio, [daños] (incluyendo compensatorio, general, especial, consecuente, ejemplar y punitivo), responsabilidad y obligaciones de cualquier naturaleza, ya sea conocida en el momento que me retiro del parque o que se den a conocer luego, que ocurran a cuenta de, o de cualquier manera surja o tenga alguna conexión con: (a) mis actividades dentro del parque; (b) las actividades de otros dentro del parque; (c) la operación del parque por Altitude West; (d) mi uso de cualquier y todas las facilidades del parque; y (e) mi uso de cualquier y todo equipo dentro del parque, ya sea propiedad mía, de Altitude West o de tercero partido".

10) El relevo también dice: "Entiendo completamente que participar en las actividades del parque implica esfuerzo físico; eso significa que yo (i) tengo buena salud para participar de las actividades del parque; (ii) no tengo ninguna condición física previa, incluyendo sin limitación embarazo, problemas ortopédicos, incluyendo problemas de espalda; problemas del corazón y/o problemas de respiración, que se puedan afectar o empeorar por el uso del parque; y (iii) no utilizaré el parque o sus facilidades bajo el uso de drogas, alcohol o medicamentos que puedan afectar mis habilidades físicas o mi juicio."

11) El 8 de enero de 2022, D.R.R. acudió al parque Altitude junto a su madre.

12) La señora Reyes compró taquillas para 90 minutos de participación.

13) La señora Reyes y su hijo, D.R.R.[,] participaron en el parque voluntariamente.

14) El "wipeout" tiene un motor de donde se desprenden dos brazos giratorios a distintas alturas. Los brazos están recubiertos; no son de metal.

15) Afuera del "wipeout", Altitude tenía colocados letreros con las instrucciones de uso.

16) El día del accidente, el menor D.R.R. medía 4'3" y pesaba menos de 198 lbs.

17) El "wipeout" se juega como sigue: cuando el brazo bajo anaranjado pasa, el jugador tiene que brincarlo. Cuando pasa el brazo más alto rosado, tiene que agacharse.

18) El día del accidente, la empleada que estaba manejando el "wipeout" era la "court monitor" la Sra. Gladysha Molina (señora Molina).

19) El día del accidente, la señora Molina ya había sido la "court monitor" a cargo del "wipeout" en varias ocasiones.

20) El accidente del menor quedó registrado por las cámaras de grabación en Altitude.

## Hechos Controvertidos:

1) Si Altitude instruyó de forma adecuada a sus empleados sobre el uso y el manejo de la atracción "wipeout" así como también sobre las posibles lesiones y la gravedad de las mismas que se puede sufrir al usar la mencionada atracción.

2) Si Altitude brinda el mantenimiento requerido e idóneo que conlleva la atracción "wipeout" conforme a las instrucciones sobre seguridad y manejo del equipo.

3) Si Altitude cumple con las instrucciones y los manuales correspondientes del equipo.

4) Si los operadores que emplea Altitude están suficientemente adiestrados conforme a las instrucciones de manejo y operación del "wipeout".

5) Si Altitude alteró la mecánica del equipo.

6) Si los rótulos contienen reglas e instrucciones suficientes y detalladas que ayuden al público en general a comprender riesgos y las medidas de seguridad relacionadas con el "wipeout".

7) Si Altitude ha aconsejado a sus visitantes sobre los riesgos, las posibles lesiones que puede sufrir al utilizar el "wipeout" y el funcionamiento de dicha atracción.

8) Si Altitude orienta de forma adecuada y detallada sobre la dinámica del juego en la atracción "wipeout" a sus clientes.

9) Si Altitude supervisa de forma eficiente a los operadores en cuanto al manejo y operación de la atracción "wipeout".

10) Si Altitude y sus operadores tomaron las medidas necesarias el día de los hechos para evitar que los participantes de la atracción "wipeout" sufrieran accidentes.

11) Los detalles y las circunstancias del accidente ocurrido el 8 de enero de 2022.

12) La condición física y de salud del menor D.R.R. previo al accidente y participación de la atracción "wipeout".

13) ¿En Cuántas ocasiones la señora Molina había sido la "court monitor" a cargo del wipeout el día del accidente?

14) La validez del contrato de relevo de responsabilidad.

15) La interpretación del contrato de relevo de responsabilidad.
16) La intención de las partes en cuanto al contrato de relevo de responsabilidad.
17) Si antes de que la señora Reyes firmara el mencionado contrato, Altitude orientó verbal y apropiadamente a la codemandante, señora Reyes[,] en cuanto al contrato de relevo de responsabilidad y las implicaciones de este en relación con los accidentes que puedan ocurrir en la atracción "wipeout".
18) La responsabilidad de las partes, si alguna.
19) Los daños, si alguno.

En desacuerdo, el 28 de marzo de 2024, **ALTITUDE PARK** presentó una *Moción de Reconsideración* en la cual consignó su inconformidad con el dictamen.[8] Seguidamente, el 2 de abril de 2024, la señora **REYES PERMUY** presentó una *Oposición a Moción de Reconsideración y Solicitud se Declare Sin Lugar*.[9] Al otro día, el 3 de abril de 2024, se pronunció la *Resolución* declarando no ha lugar la petitoria de reconsideración.[10]

Insatisfecho con ese proceder, el 2 de mayo de 2024, **ALTITUDE PARK** recurrió ante este foro revisor intermedio mediante *Petición de Certiorari.* En la misma, señala el(los) siguiente(s) error(es):

Erró el TPI al denegar la solicitud de sentencia sumaria de Altitude.

El TPI erró al Rechazar Hechos debidamente sustentados.
    a. Hecho admitido, pero no acogido en la Resolución.
    b. Hechos apoyados en el video estipulado del accidente.
    c. Hechos objetados "según redactados".
    d. Hechos objetados por ser "self-serving".
    e. Hechos objetados por fundamentos evidenciarios incorrectos.
    f. Hechos objetados con argumentos o referencias incorrectas.
    g. Hechos que no fueron refutados por evidencia.

Erró el TPI al identificar "Hechos Controvertidos" Inmateriales.

El 7 de mayo de 2024, intimamos *Resolución* en la cual concedimos un plazo de diez (10) días para mostrar causa por la cual no debíamos expedir el auto de *certiorari* y revocar el dictamen impugnado. Igualmente, se le requirió a **ALTITUDE PARK** exponer si el pendrive conteniendo la grabación o video formaba o no parte de los autos del expediente judicial del caso

---

[8] Apéndice de la *Petición de Certiorari*, págs. 218-238.
[9] *Íd.*, págs. 239-241.
[10] *Íd.*, págs. 242-244.

**BY2022CV03552.** El 10 de mayo de 2024, **ALTITUDE PARK** presentó *Moción en Cumplimiento de Orden* revelando que el *pendrive* conteniendo el video fue estipulado por las partes y ello está recogido en el *Informe para el Manejo de Caso* presentado el 16 de febrero de 2023. Al día de hoy, habiendo transcurrido dicho término, la señora **REYES PERMUY** no ha comparecido.

Evaluado concienzudamente el expediente del caso, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

- II -

- A - *CERTIORARI*

El auto de *certiorari* es un vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda revisar discrecionalmente las órdenes o resoluciones interlocutorias decretadas por una corte de inferior instancia judicial.[11] Por ello, la determinación de expedir o denegar este tipo de recurso se encuentra enmarcada dentro de la discreción judicial.[12]

De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[13] Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho".[14]

Ahora bien, en los procesos civiles, la expedición de un auto de *certiorari* se encuentra delimitada a las instancias y excepciones contenidas en la Regla 52.1 de las de Procedimiento Civil de 2009.[15] La aludida Regla dispone que solo se expedirá un recurso de *certiorari* cuando, "se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter

---

[11] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021).
[12] *Íd.*
[13] *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016).
[14] *Íd.*
[15] 32 LPRA Ap. V, R. 52.1; *Torres González v. Zaragoza Meléndez, supra.*

dispositivo".[16] En ese sentido, y a manera de excepción, se podrá expedir este auto discrecional cuando:

> (1) se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales;
> (2) en asuntos relacionados a privilegios evidenciarios;
> (3) en casos de anotaciones de rebeldía;
> (4) en casos de relaciones de familia;
> (5) en casos revestidos de interés público; o
> (6) en cualquier situación en la que esperar a una apelación constituiría un fracaso irremediable de la justicia.[17]

Lo anterior constituye tan solo la primera parte de nuestro análisis sobre la procedencia de un recurso de *certiorari* para revisar un dictamen del Tribunal de Primera Instancia. De modo que, aun cuando un asunto esté comprendido entre las materias que las Reglas de Procedimiento Civil de 2009 nos autorizan a revisar, el ejercicio prudente de esta facultad nos requiere tomar en consideración, además, los criterios dispuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones.[18]

Por otro lado, el examen de los [recursos] discrecionales no se da en el vacío o en ausencia de otros parámetros.[19] Para ello, la Regla 40 de nuestro Reglamento instituye los indicadores a considerar al evaluar si se debe o no expedir un recurso de *certiorari*. A saber:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho;
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema;
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia;
> (D) Si el asunto planteado exige una consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados;
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración;
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio; y
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[20]

---

[16] *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021).

[17] *Torres González v. Zaragoza Meléndez, supra*; *McNeil Healthcare v. Mun. Las Piedras I, supra*, pág. 404; *800 Ponce de León v. AIG*, 205 DPR 163 (2020).

[18] *McNeil Healthcare v. Mun. Las Piedras I, supra*, pág. 404; *800 Ponce de León v. AIG, supra*.

[19] *Íd.*

[20] Véase la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In Re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 141, pág. 63, 216 DPR ____ (2025); *Torres González v. Zaragoza Meléndez, supra*; *Rivera Figueroa v. Joe´s European Shop*, 183 DPR 580 (2011).

Es preciso aclarar, que la anterior no constituye una lista exhaustiva, y ninguno de estos criterios es determinante, por sí solo, para justificar el ejercicio de nuestra jurisdicción.[21] En otras palabras, los anteriores criterios nos sirven de guía para poder determinar de la forma más sabia y prudente si se justifica nuestra intervención en la etapa del procedimiento en que se encuentra el caso.[22] Ello, pues distinto al recurso de apelación, este Tribunal posee discreción para expedir el auto de *certiorari*.[23] La delimitación que imponen estas disposiciones reglamentarias tiene "como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación."[24]

Finalmente, este Tribunal solo intervendrá con las determinaciones interlocutorias discrecionales procesales del tribunal sentenciador cuando este último haya incurrido en arbitrariedad o en un craso abuso de discreción.[25] Esto es, "que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial".[26]

### - B - *SENTENCIA SUMARIA*

La *sentencia sumaria* es un mecanismo procesal que tiene el propósito de facilitar una solución justa, rápida y económica de aquellos litigios civiles que no presentan controversias genuinas de hechos materiales.[27] En estos casos, es innecesaria la celebración de una audiencia en su fondo, ya que los documentos no controvertidos que acompañan la moción de *sentencia sumaria* sirven para demostrar, efectivamente, la inexistencia de una

---

[21] *García v. Padró*, 165 DPR 324, 335 n. 15 (2005).
[22] *Mun. Caguas v. JRO Construction, Inc.*, 201 DPR 703, 712 (2019).
[23] *Feliberty v. Soc. de Gananciales*, 147 DPR 834, 837 (1999).
[24] *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 486– 487 (2019); *Mun. Caguas v. JRO Construction Inc., supra*.
[25] *García v. Asociación*, 165 DPR 311, 322 (2005).
[26] *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).
[27] *Banco Popular de Puerto Rico v. Zorrilla Posada y otro*; 2024 TSPR 62; 213 DPR ____; *Birriel Colón v. Supermercado Los Colobos*, 2023 TSPR 120; 213 DPR ___ (2023); *Vera v. Dr. Bravo*, 161 DPR 308, 331 (2004).

controversia real sobre hechos materiales, por lo que solo resta aplicar el derecho.[28]

Este mecanismo se encuentra instituido en la Regla 36 de las de Procedimiento Civil de 2009. Las Reglas 36.1 y 36.2 de las de Procedimiento Civil de 2009 prescriben que cualquiera de las partes podrá presentar "una moción fundamentada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación solicitada".[29]

En cualquier caso, "la parte que promueve la *sentencia sumaria* debe establecer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material".[30] Ello se debe a que el mecanismo de *sentencia sumaria* solo está disponible para la disposición de aquellos casos que son claros, cuando el tribunal tenga ante sí la verdad sobre todos los hechos pertinentes.[31] Para ello, debe desglosar en párrafos debidamente numerados y, para cada uno de ellos, debe especificar la página o el párrafo de la declaración jurada u otra prueba admisible en evidencia que lo apoya.[32] La jurisprudencia interpretativa ha definido que "[u]n hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable".[33]

---

[28] *Bobe et al. v. UBS Financial Service,* 198 DPR 6 (2017); *Ramos Pérez v. Univisión,* 178 DPR 200, 214 (2010).

[29] 32 LPRA Ap. V, R. 36.1 y 36.2. *Acevedo y otros v. Dpto. Hacienda y otros,* 212 DPR 335 (2023).

[30] *Oriental Bank v. Caballero García,* 212 DPR 671 (2023).

[31] *Burgos López et al. v. Condado Plaza;* 193 DPR 1 (2015); *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 DPR 881, 911-912 (1994).

[32] Regla 36.3(a) de las de Procedimiento Civil de 2009, *supra.* Antedicha Regla enuncia: (a) La moción de sentencia sumaria se notificará a la parte contraria y contendrá lo siguiente: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414 (2013).

[33] *Serrano Picón v. Multinational Life Ins.,* 212 DPR 981 (2023).

Por su parte, quien se opone a que se dicte *sentencia sumaria* está obligado a controvertir la prueba presentada, contestando de forma detallada y específica aquellos hechos pertinentes para demostrar que existe una *controversia real y sustancial* que debe dilucidarse en juicio.[34] Entre la evidencia que puede presentar, están las siguientes: "certificaciones, documentos públicos, admisiones de la parte contraria, deposiciones, contestaciones a interrogatorios, declaraciones juradas o affidávits y hasta prueba oral".[35] Es decir, no basta con presentar meras afirmaciones. Resulta insuficiente para derrotar una solicitud de *sentencia sumaria* una declaración jurada que meramente exponga conclusiones reiteradas de las alegaciones de la demanda y hechas sin conocimiento personal de los hechos.[36] Empero, será el análisis del derecho aplicable y de la existencia de alguna *controversia sustancial de hechos materiales* lo que determinará si procede dictar sentencia sumariamente, y no el que la parte contraria deje de oponerse a la solicitud, o lo haga defectuosamente.[37]

Al evaluar la procedencia de la solicitud de *sentencia sumaria,* el tribunal **analizará los documentos que acompañan la moción de** ***sentencia sumaria*****, los documentos incluidos con la moción en oposición y aquellos que obren en el expediente del tribunal**.[38] Por ello, "[t]oda inferencia que se haga a base de los hechos y documentos que obren

---

[34] *Ramos Pérez v. Univisión*, *supra*, 214. La Regla 36.3 (b) de las de Procedimiento Civil de 2009 sobre la moción y procedimiento expone: La **contestación a la moción de sentencia sumaria** deberá ser presentada dentro del término de veinte (20) días de su notificación y deberá contener lo siguiente: (1) lo indicado en los subincisos (1), (2) y (3) del inciso anterior; (2) una relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (3) una enumeración de los hechos que no están en controversia, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (4) las razones por las cuales no debe ser dictada la sentencia, argumentando el derecho aplicable.
[35] *Acevedo y otros v. Dpto. Hacienda y otros*, *supra*; citando a R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta. Ed., San Juan, LexisNexis, 2017, pág. 318. Regla 36.5 de las de Procedimiento Civil de 2009, 32 LPRA Ap. V, R.36.5.
[36] *Íd.*, págs. 215-216.
[37] *Ortiz v. Holsum*, 190 DPR 511, 525 (2014).
[38] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, *supra*, 913 (1994). (énfasis nuestro).

en los autos, debe tomarse desde el punto de vista más favorable al que se opone a la solicitud de sentencia sumaria".[39] El tribunal **no** tiene que considerar los hechos que no están debidamente enumerados y no hagan referencia a los párrafos o páginas de las declaraciones juradas u otra prueba admisible en evidencia.[40] Así como, tampoco debe apreciar cualquier declaración jurada o cualquier otra prueba a la cual no se haya hecho referencia en la relación de hechos.

No obstante, "cualquier duda no es suficiente para derrotar una moción de sentencia sumaria; por el contrario, tiene que ser una duda que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes".[41] Por tanto, "[existe] una controversia real cuando la prueba ante el tribunal es de tal naturaleza que un juzgador racional de los hechos podría resolver a favor de la parte promovida".[42]

La parte promovente puede prevalecer por la vía sumaria si presenta prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. En cambio, la parte promovida puede derrotar la moción de tres (3) maneras diferentes: (1) si establece una controversia real de hechos sobre uno de los elementos de la causa de acción de la parte promovente; (2) si presenta prueba que apoye una defensa afirmativa; o (3) si presenta prueba que establezca una controversia sobre la credibilidad de los testimonios jurados que presentó la parte promovente.[43]

En caso de que el foro primario resuelva que procede la celebración de un juicio, es decir: (i) deniegue dictar *sentencia sumaria* sobre la totalidad del pleito; (ii) no conceda todo el remedio solicitado; o (iii) deniegue la moción de *sentencia sumaria*, tiene que consignar los hechos sobre los cuales no hay controversia. Ello, pues serán estos sobre los que será innecesario pasar

---

[39] *Mgmt. Adm. Servs. Corp. v. E.L.A.*, 152 DPR 599, 610- 611 (2000).
[40] Regla 36.3(d) de las de Procedimiento Civil de 2009, *supra.*
[41] *Ramos Pérez v. Univisión, supra*, pág. 214.
[42] *Íd.*
[43] *Íd.*, pág. 217.

prueba durante el juicio.[44] Del mismo modo, el tribunal puede dictar *sentencia sumaria* de naturaleza interlocutoria para resolver cualquier controversia que existe entre las partes y sea separable de las controversias restantes.[45]

Aun así, este Tribunal de Apelaciones se encuentra en la misma posición que el Tribunal de Primera Instancia al momento de revisar [denegaciones] o concesiones de mociones de *sentencia sumaria*.[46] Esto significa que, al evaluar la solicitud de *sentencia sumaria*, al igual que el foro primario, debemos aplicar los criterios de la Regla 36 de las de Procedimiento Civil de 2009 y su jurisprudencia interpretativa. Ello supone examinar el expediente de la manera más favorable hacia la parte que se opuso a la solicitud de *sentencia sumaria*, llevando a cabo todas las inferencias permisibles a su favor. Como resultado, tenemos el deber de revisar que tanto la moción de *sentencia sumaria* como su oposición cumplan con los requisitos de forma instituidos en la Regla 36 de las de Procedimiento Civil de 2009.[47]

En esencia, si el foro primario **acogió la moción** y dictó sentencia sumariamente, nos corresponderá revisar que, efectivamente sí existen hechos materiales en controversia.[48] De existir, procederemos entonces a cumplir con la exigencia de la Regla 36.4 de las de Procedimiento Civil de 2009 y exponer concretamente cuáles hechos materiales se encontró que están en controversia y cuáles están incontrovertidos.[49] Puede hacerse en la

---

[44] *Pérez Vargas v. Office Depot,* 203 DPR 687 (2003).
[45] 32 LPRA Ap. V, R. 36.3(e).
[46] *Rosado Reyes v. Global Healthcare*, 205 DPR 796, 809 (2020); *Rivera Matos et al. v. Triple-S et al.,* 204 DPR 1010, 1025 (2020).
[47] *Birriel Colón v. Econo y otro, supra.*
[48] *Rivera Matos et al. v. Triple S et al., supra.*
[49] La mencionada Regla 36.4. sobre Pleito no decidido en virtud de moción decreta: Si en virtud de una moción presentada bajo las disposiciones de esta regla no se dicta sentencia sobre la totalidad del pleito, no se concede todo el remedio solicitado o se deniega la moción, y es necesario celebrar juicio, será **obligatorio** que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, y hasta qué extremo la cuantía de los daños u otra reparación no está en controversia, ordenando los procedimientos ulteriores que sean justos en el pleito, incluso una vista evidenciaria limitada a los asuntos en controversia. Al celebrarse el juicio, se considerarán probados los hechos así especificados y se procederá de conformidad. A base

decisión en el cual se disponga del caso y hacer referencia al listado enumerado de hechos incontrovertidos dispuestos por el foro recurrido. Si se determina que los hechos **materiales realmente están incontrovertidos (denegó)**, se procederá a revisar *de novo* si el Tribunal de Primera Instancia adjudicó correctamente el derecho.

En palabras sencillas, los tribunales revisores estamos limitados a: (1) considerar los documentos que se presentaron ante el foro de instancia; (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales; y (3) comprobar si el derecho se aplicó de forma correcta.[50]

### - C - *RESPONSABILIDAD CIVIL EXTRACONTRACTUAL*

El Artículo 1536 del Código Civil de Puerto Rico de 2020 instaura que "la persona que por culpa o negligencia causa daño a otra, viene obligada a repararlo".[51]

Aun así, "la persona que por acción u omisión cause daño a otro, interviniendo culpa o negligencia, estará obligada a reparar el daño causado siempre que concurran tres (3) elementos básicos: 1) la presencia de un daño físico o emocional en la parte demandante; (2) que haya surgido a raíz de un acto u omisión culposa o negligente del demandado; y (3) que exista un nexo causal entre el daño sufrido y dicho acto u omisión".[52]

El Artículo 1545 del Código Civil de Puerto Rico de 2020 concreta que "[e]n todos los casos previstos en el presente capítulo, la imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización en proporción al grado de tal imprudencia.".[53] En nuestro ordenamiento jurídico desde 1956, la negligencia comparada se ha distanciado del concepto de negligencia contributoria.[54] Bajo la

---

de las determinaciones realizadas en virtud de esta regla, el tribunal dictará los correspondientes remedios, si alguno.

[50] *Birriel Colón v. Econo y otro, supra*; *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 114-116 (2015).

[51] 31 LPRA § 10801.

[52] *Colón y otros v. K-mart y otros*, 154 DPR 510, 517 (2001).

[53] 31 LPRA § 10810

[54] Rubén Nigaglioni Mignucci, *Código Civil 2020 y su historial legislativo*, (M. R. Garay Aubán, ed.,) San Juan, Ed. Situm, 2020, T. II, pág. 1129.

negligencia contributoria si un legitimado activo incurría en negligencia se le privaba de poder obtener indemnización aunque haya sufrido daño alguno.[55]

### - D - DOCTRINA DE LA ASUNCIÓN DE RIESGOS

Nuestro ordenamiento reconoce que cuando puede demostrarse que los daños han sobrevenido porque la parte demandante consintió a exponerse al riesgo creado por la parte demandada aplica la defensa de *asunción de riesgo*.[56]

A tenor con ello, la referida doctrina tiene dos (2) modalidades, a saber: la *asunción de riesgo* primaria y la *asunción de riesgo* secundaria.[57] La primera modalidad trata de una situación en la que existe un deber limitado de cuidado por parte de la parte demandada.[58] Por el contrario, la segunda modalidad se refiere a una situación que se configura como una manifestación de *negligencia comparada*.[59]

En síntesis, la *asunción de riesgo* primaria se utiliza en situaciones en que la parte demandada no ha incurrido en responsabilidad, pues este no tenía obligación de clase alguna para con la parte demandante; o de haberla tenido, no la quebrantó.[60] Sobre la doctrina de *asunción de riesgo* en *Palmer v. Barreras*, el Alto Foro dispuso que:

> La defensa de voluntariamente asumir el riesgo ha sido desarrollada de la idea expresada en la máxima latina *volenti non fit injuria*, que quiere decir que '**Aquello a lo que una persona asiente no puede ser considerado en derecho como un daño**.' Una expresión general de esta doctrina es que 'Si una persona, **a sabiendas y comprendiendo** el **peligro existente**, **voluntariamente** se expone al mismo, aun cuando no sea negligente, debe considerarse que dicha persona ha asumido el riesgo y está impedida de recobrar por daños resultantes del mismo. Está predicada en la teoría del conocimiento y apreciación del peligro y el sometimiento voluntario al mismo.[61]

### - E - ESTABLECIMIENTOS ABIERTOS AL PÚBLICO

---

[55] *Id.*
[56] H. Brau del Toro, *Los Daños y Perjuicios Extracontractuales*, 2da Ed., Pub. J.T.S. Inc., 1986, Cap. VII, pág. 40.
[57] *Urbino v. San Juan Racing Assoc., Inc.,* 141 DPR 210, 218 (1996).
[58] *Soto v. Tropigas de P.R.,* 117 DPR 863, 866 (1986).
[59] *Íd.*
[60] *Viñas v. Pueblo Supermarket*, 86 DPR 33 (1962); *Texidor v. Admon. de Parques*, 85 DPR 877 (1962).
[61] 73 DPR 278, 281 (1952) (énfasis nuestro).

Es una norma distinguida que cuando una persona o empresa mantiene abierto al público un establecimiento con el objetivo de llevar a cabo operaciones comerciales para su beneficio tiene el deber de mantener dicho establecimiento en condiciones de seguridad tales que sus clientes no sufran daño alguno.[62] A saber, que el dueño u operador encargado debe ejercer un *cuidado razonable* para mantener la seguridad de las áreas accesibles al público y, de esa manera, soslayar que sus clientes sufran algún daño.[63] En otras palabras, la persona o empresa debe tomar las medidas necesarias para que las áreas a las que tienen acceso sus clientes sean razonablemente seguras.[64]

Dicho esto, en particular, los propietarios de establecimientos comerciales son responsables por los daños ocasionados a causa de aquellas condiciones peligrosas existentes, siempre que estas sean conocidas por los propietarios o su conocimiento le sea imputable.[65] Pero, el Tribunal Supremo ha sido enfático y **ha reiterado que el dueño no tiene responsabilidad absoluta** sobre cualquier tipo de daño sufrido por sus clientes.[66] En palabras sencillas, el mero hecho de que acontezca un accidente tampoco da lugar a la inferencia de negligencia.[67] Por el contrario, en los casos de accidentes en establecimientos comerciales, se ha impuesto responsabilidad cuando la parte demandante prueba que existían condiciones peligrosas dentro de las tiendas correspondientes, que eran del conocimiento de los propietarios o se le podía imputar a estos su conocimiento.[68] Dicho de otra forma, la parte demandante tiene que probar que: (1) el daño sufrido se debió a la existencia de una condición peligrosa; (2) esa condición fue la que con mayor

---

[62] *Colón y otros v. K-mart y otros, supra*, 518 (2001).
[63] *Íd.*
[64] *Santiago v. Sup. Grande, supra*, pág. 806.
[65] *Colón y otros v. K-mart y otros, supra*, pág. 518.
[66] *Santiago v. Sup. Grande, supra*, págs. 806-807; *Colón y otros v. K-mart y otros, supra,* págs. 518-519. (énfasis nuestro).
[67] *Admor. F.S.E. v. Almacén Ramón Rosa*, 151 DPR 711, 724 (2000).
[68] *Colón y otros v. K-mart y otros, supra*, pág. 519.

probabilidad ocasionó el daño; y (3) ésta era conocida por la parte demandada, o debió conocerla.[69]

Por ello, al foro primario le corresponde evaluar la evidencia presentada y determinar en cada caso si, por preponderancia de la prueba, existía una condición peligrosa y si era del conocimiento del dueño del establecimiento.[70]

- III -

**ALTITUDE PARK** apuntala que el foro de instancia se equivocó al declarar no ha lugar su *Moción de Sentencia Sumaria* presentada el 16 de octubre de 2023 cuando la parte contraria, es decir, la señora **REYES PERMUY,** admitió o reconoció varios hechos y el tribunal primario decidió no incorporarlos en su *Resolución*. En concreto, **ALTITUDE PARK** arguyó que la señora **REYES PERMUY** conocía los riesgos que podía significar la utilización del trampolín y, sin embargo, decidió asumir el riesgo. Añadió que, se trató de un accidente por la falta de agilidad del menor D.R.R. **ALTITUDE PARK** reseñó los siguientes cinco (5) hechos que, presuntamente la señora **REYES PERMUY** aceptó y el tribunal de instancia no los consagró en la determinación recurrida, a saber:

a. El Wipeout tiene unos controles que son operados por un empleado de Altitude.
b. La grabación refleja que el menor D.R.R. llevaba como 30 segundos brincando en el Wipeout cuando ocurrió el accidente.
c. Durante dicha sesión, Gladysha no cambió la dirección de los brazos giratorios ni tampoco la velocidad a la cual estaban rotando.
d. D.R.R. ya había brincado 5 veces por encima del brazo anaranjado y había esquivado 4 veces el brazo rosado. En la décima ocasión, un niño que estaba en una estación previa a la de D.R.R. chocó con el brazo giratorio, lo cual ocasionó un leve retraso en su movimiento. Al continuar su rumbo y llegar al área de D.R.R., este brincó antes de tiempo por encima del brazo anaranjado, lo cual ocasionó que su pierna izquierda se enganchara en el tubo y su cuerpo cayera sobre la pierna derecha.
e. De hecho, el video refleja que previo al accidente de D.R.R., un niño tocó los brazos giratorios, sin que ello provocara un accidente.

---

[69] *Íd.*
[70] *Íd.*

Desde esta perspectiva, **ALTITUDE PARK** acentuó que, a su juicio, procedía acoger los hechos debidamente sustentados con evidencia admisible.

Como cuestión de umbral, precisa señalar que, a tenor con la normativa atinente a la revisión de *sentencia sumaria,* y luego de justipreciar concienzudamente los respectivos escritos presentados, hallamos que: (i) la *Moción de Sentencia Sumaria* presentada el 16 de octubre de 2023 por **ALTITUDE PARK;** y (ii) la *Oposición a "Moción de Sentencia Sumaria"* presentada el 22 de noviembre de 2023 por la señora **REYES PERMUY** cumplen con los requisitos de forma estatuidos en la Regla 36 de las de Procedimiento Civil de 2009.

En otro orden de cosas, debemos ponderar si se aplicó correctamente el derecho al asunto que nos ocupa. Resolvemos en la afirmativa. Lo cierto es que sí existen dudas en torno a lo ocurrido el 8 de enero de 2022 cuando el menor **D.R.R.** estuvo en el trampolín "Wipeout" en **ALTITUDE PARK**. A su vez, dicho hecho incide sobre la controversia medular de este caso, es decir, si la afección o fractura del fémur derecho del menor **D.R.R.** fue causado o no por negligencia de **ALTITUDE PARK**. En definitiva, colegimos que el tribunal primario no abusó de su discreción, ni cometió perjuicio o error manifiesto al declarar, en cuanto a este aspecto, no ha lugar la *Moción de Sentencia Sumaria* presentada por **ALTITUDE PARK**. Su determinación es esencialmente correcta y está fundamentada en los documentos que obran en el expediente judicial. No se cometieron el(los) error(es).

En resumen, acogemos los veinte (20) hechos no controvertidos y se debe incluir "El Wipeout tiene unos controles que son operados por un empleado de Altitude".[71] Indudablemente, en el presente caso existen controversias o dudas en torno a la responsabilidad u omisiones, si alguna,

---

[71] Véase el Hecho Material Incontrovertido número 30 en la *Moción de Sentencia Sumaria* presentada el 16 de octubre de 2023 por **ALTITUDE PARK** que fuese admitido por la señora **REYES PERMUY** en su *Oposición a "Moción de Sentencia Sumaria".*

de cada una de las partes. Así, discurrimos que se aplicó correctamente el derecho y existen hechos que únicamente pueden ser clarificados en un juicio en su fondo. De manera que, actuó apropiadamente el foro primario al no disponer de la *Demanda* por la vía sumaria.

- **IV** -

Por los fundamentos antes expuestos, ***expedimos*** el auto de *Certiorari;* a los fines de ***modificar*** la providencia judicial para incluir como hechos no controvertidos: "El Wipeout tiene unos controles que son operados por un empleado de Altitude"; así modificada, ***confirmamos*** la *Resolución* decidida 14 de marzo de 2024 por el Tribunal de Primera Instancia (TPI), Sala Superior de Bayamón, en todos sus demás extremos. En consecuencia, se **ordena** la continuación de los procedimientos en armonía a lo aquí resuelto.

Al amparo de la Regla 35 (A)(1) de nuestro Reglamento, el Tribunal de Primera Instancia puede proceder de conformidad con lo aquí resuelto, sin tener que esperar por el recibo de nuestro mandato.[72]

**Notifíquese inmediatamente.**

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

La Jueza Lebrón Nieves concurre con el resultado sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[72] La Regla 35 (A)(1) instituye: "La presentación de una solicitud de *certiorari* no suspenderá los procedimientos ante el Tribunal de Primera Instancia, salvo una orden en contrario expedida por iniciativa propia o a solicitud de parte por el Tribunal de Apelaciones. La expedición del auto de *certiorari* suspenderá los procedimientos en el Tribunal de Primera Instancia, **salvo que el Tribunal de Apelaciones disponga lo contrario**." Véase la Regla 35 (A)(1) del Reglamento del Tribunal de Apelaciones, según enmendada, *In Re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 141, págs. 58-59, 216 DPR ____ (2025).